323-0256 Charles Landwer Appellant v. Citibank, N.A. Appellee. Okay, Mr. Landwer, you may proceed. Well, yes, good morning, Justices. I had received a telephone call and it was attempted fraud and I attempted to try to ascertain who committed the fraud and I was Supreme Court Rule 224 petition to determine who the responsible parties are. I filed my petition in the Circuit Court of DuPage County. I served the Citibank N.A., who is the respondent, and I asked them for the name, address, and phone numbers of the people who controlled certain accounts that I was... Why did you serve them, Mr. Landwer? I served them a copy of the summons and the petition. Why did you choose them to serve? Because that is when I zelled, when the scam people told me to zell the money, I determined through my bank that the money was transferred to a Citibank account. Was it your account or was it, as alleged, your girlfriend's account? Yeah, it's my friend Karen Carlson's account that she gave me the debit card and allowed me to use. Just like when I rent a car from Hertz Motor Company. It's not their car, but I'm driving the car. If somebody hits me, I'm the one, you know, not you can't sue Hertz, but you know, Hertz can't. It's me who I got hurt, but yes. So, I had some damages under the TCPA and other federal charges, and I wanted to bring in action, not mostly for money, but to stop these people from scamming other older people. And I filed my petition with Citibank to determine who the people who controlled that account were. And then I thought that would follow the money. I guess my question is, did you use your friend's account after receiving this phone call to solicit things? How did this occur? How did you choose that particular account to try to get information? The scammers wanted to shut off my electric. I'm on oxygen, and I kind of need my electric for medication I have in the refrigerator and such. So, electric is probably more important to me than most people, or I worry about it more. Glen, we're asking a simple question. Did you use the credit card? I did. Yes, absolutely. The debit card. Yes. Thank you. Go on, please. And we went to court to have a hearing, and the petitioner didn't show up for the first hearing. And the judge gave me the permission to order me to allow me to issue a summons. And then when I issued the summons, then they moved the cost of summons on grounds I had no standing. And I believe I do have standing. I believe I was the one who was injured. Not financially. Nobody's talking about $9.24. We're talking about the violation of the TCPA and the stress of losing your electricity. And that's where we're at today. Okay. Do you have anything further to add? Using my friend's account does not negate my standing. I believe I have standing in the matter. I believe that I was the one who was... Truly, the damage is the violation of the TCPA and the other state and federal communication laws. The damage is at the $9.24 that they were able to get out of my... Not mine, but out of her account. And then they responded, also said I was using a cell phone that I don't pay for. And again, the rented car. If I'm driving a car that belongs to Hertz, and you hit me, I'm damaged whether I own the car or not. To me, that doesn't seem to make sense. I was the one who was called. I was the one who was damaged. And I believe I am. And I don't believe that a person's name, address, and telephone number is some protected financial information. It shouldn't be. If they're innocent, then they should be able to come to court and say I'm innocent. No problem. What do they got to worry about? And what else is interesting is they closed my girlfriend's account, but the scammer account according to yesterday afternoon is still open. Which is kind of like a funny anecdote, I guess. So I think the issue is standing. And I believe I have standing to bring up my petition for discovery. Okay. That's all. Okay. Any questions from the bench or the court? I have a few more. Mr. Lind, when you filed your motion and asked to have the subpoena issue to discovery take place, did you explain to the court in your pleadings and to the other parties involved in the case that you were not asking for this information because it was yours? You were asking for this information because it would help you determine who was trying to scam you? Was that apparent on your face of your pleadings? Yes, I believe I did. Yes, because I pleaded cause of action. I needed to plead to get by a 2-6-15 motion as the rural state. I laid out my case of what happened and that I was the victim to this telecommunications scam. And you had also filed a motion prior to this case being heard, which is taken with the case itself regarding striking some statements of facts in the brief of the respondent or the appellee. Is that correct? That is correct. And I read the paragraphs. Some are connected to an allegation of someone who apparently was convicted of federal charges and the other is not related to that. Can you speak to that motion? Yeah, I was convicted of a federal case, what, 10 or 15 years ago, and that has nothing to do with this case. And the respondent's attorney brought that up in our hearing and just clouds the issue. That's not the issue. If the Citibank thinks I'm doing something wrong, I can give her the number of the U.S. attorney and he can investigate, but I'm not doing anything wrong. I'm the victim. It appeared from my reading that you also had some paragraphs before that allegation that was made that you wanted to strike with. Am I incorrect about that? Yes, that is correct. It's just all hyperbole, nothing that focuses on the issue of standing, which I believe is the issue. Do I have standing to request the name and address and phone number of people who scammed me? Whether it's my car, Hertz's car, the telephone, your telephone, whoever telephoned, I was the one who was called and I was the one who was attempted to be scammed. Thank you, Mr. Landwehr. You've answered my question. Thank you, sir. Any further questions from the bench? Your audio, Mr. Justice Brent. Mr. Landwehr, is it correct that everything you requested was provided to Ms. Gatto? It was not. I included an affidavit. She received nothing. I wouldn't be here if I had the provided Ms. Gatto the information you were requesting in a subpoena. Correct. I believe her name is Karen Carlson. I apologize. No, that's okay. Just so we keep everything. We never received it. Do they have a green card? I hope they wouldn't send that information, just an old plain white envelope floating around. I believe the suggestion was, and I apologize for confusing the names, that the banker Gatto reached out to Ms. Carlson and indicated that the documents were available. Did that happen to your knowledge? I don't know. She never received them. She provided an affidavit to that extent. All right. Thank you. I have no additional questions. Thank you, sir. But she never requested them. Is that correct, Mr. Landwehr? She never requested them. I was the one who requested them. This would be for opposing counsel. So at the best, they're maintaining there was an offer perhaps made to her. We'll find an answer to that. She has an affidavit. She never received them. Does the affidavit say that she was never offered them? I don't know if she was ever offered them or not, but she never requested them. I don't believe she needs them or wants them or was even really wanted to be involved. Justice Holdridge, can I jump in to that question? Sure, please do. Yes. But you wanted them and you got her permission to get them, correct? I don't believe I asked for her permission. I believe I filed my petition and I don't believe she had a position either way. So you're asking for someone else's bank records and you're not including them as giving you authorization to do so. You're asking a third party to give you someone else's bank records without their consent, correct? But I'm only looking for the name and address and phone number of the scammers, not Ms. Carlson. Am I correct in what I asked you, Mr. Landwehr? I don't believe so. I requested information about the people whose account was accessed by the scammers, but I didn't ask for her information and I didn't ask her permission. I simply asked Citibank for the people's names. Names that did something to her account. Correct. Who money was sent to their account? Yes. I sent the money. I had the card. I put money in the bank. I would take that card to Citibank and deposit cash and just use the account. Okay. Well, given that to be the case, Mr. Landwehr, who is obligated to pay the balance due on that account? Well, it's a debit card, so you have to go to the bank with your card and with cash. Put the cash in and then you can spend it on the card. So it's not like a credit card where it's Citibank's money. It was always my cash money. I went to Citibank with the card. They would scan the card and deposit it in that account. It was never Citibank's money. It was always my cash money. No, no. Which would be different, I imagine, under a credit card, because then you would actually be using Citicorp's money until it was paid and then there'd be some other little hurdles in the way. So really, if I understand you correctly, you put money in someone else's debit card account, is that correct? Correct. I was given the card. Then that debit card was used to make payment for something that you were obligated to pay, is that correct? Sure. When I go to my medical trips, if there's a Burger King or a fast food, I would use the debit card at the restaurant. Little expenses, $10, $20. Not that that makes the difference, but yes, little expenses, and I would use the debit card for expenses. I have no further questions. Justice Brennan? I do not at this time. Thank you. You'll have time in reply, Mr. Landwehr. Thank you, sir. Thank you, gentlemen. May it please the court, my name is Debra Devasi-Babu, and I represent Appley City Bank. The facts, I can understand, are a bit hard to follow here, so if you'll bear with me, I will go through the facts. Part of the problem is Mr. Landwehr contradicted the facts in his various filings with the circuit court, and has even raised some additional facts in the appellate brief, so that would make sense why you're a bit confused on that. Mr. Landwehr obtained the subpoena from the circuit court under Rule 224 under false pretenses to the circuit court on his damages and standing to seek documents from the bank. Once the circuit court discovered the true facts, it correctly quashed Landwehr's subpoena to City Bank, and for the reasons discussed in the briefs, the court should affirm the circuit court's judgment. On November 7, 2022, Mr. Landwehr filed his initial petition for discovery. In that initial petition, he claimed that he was scammed out of several hundred dollars and that he was tricked into transferring money on three separate occasions, January 14th, January 18th, and March 1st, all of 2022, through his debit card, to unknown third parties who had posed as Commonwealth Edison. He claimed that he was injured and suffered damages and had suffered the losses identified in the petition on those dates, and he argued that in order to identify the identity of those alleged fraudsters, he needed to issue discovery to City Bank on the transactions. In that filing, he implied that the funds were taken from his own bank account. After the bank was served with the initial petition, in-house counsel for the bank contacted Mr. Landwehr via email to respond to the initial petition. After a phone call with Mr. Landwehr and subsequent emails, in-house counsel discovered that the facts were not as alleged in the initial petition by Mr. Landwehr. First of all, the was not an authorized signer on the account. Mr. Landwehr claimed and emails from Ms. Carlson to in-house counsel stated that Landwehr was allowed a debit card to withdraw funds from the account. Would you repeat that last statement a little bit, please? There were emails which were subsequently attached to Mr. Landwehr's second petition, which showed in-house counsel engaged with Mr. Landwehr and Ms. Carlson over email to say, Ms. Carlson, this account is only in your name, not in Mr. Landwehr's name. Therefore, we cannot provide the records to him, but we can provide the records to you. That was the answer to my earlier question to Mr. Landwehr. The bank offered to provide the records to the named account holder, correct? Correct, and not only that, the bank in fact provided the records to Ms. Carlson, the account holder. What was the evidence that they had done that? I can point you to the record on appeal sites, C-126 to 130, and then additionally, one more site here. Well, let's not waste our time. Just tell me. Okay, sure. Yes, what happened was in-house counsel told Ms. Carlson and Mr. Landwehr was copied on the emails. We can provide the documents for personal pickup. Is there a bank location you would like the documents dropped off at? It will take about two weeks, you know, to get that information together. Please let me know. So, Ms. Carlson wrote back. That was evidence through an email, is that correct? That's correct, and additionally, there was another email later where the bank indicated that it also mailed the documents to Ms. Carlson's address on file with the account, which is an address in Arizona. Well, that's just an affidavit, that's not an affidavit, correct? Correct, it's not an affidavit. These were emails exchanged between in-house counsel at Citibank and Mr. Landwehr. So, there was an offer made? Right, there was an offer made and Citibank's in-house counsel represented in emails to Ms. Carlson and to Mr. Landwehr. Documents have been dropped off at Kiko Goto at the Elmhurst location that Ms. Carlson indicated she wanted them dropped off at and have also been mailed to Ms. Carlson's address on file with the account. And I assume you have a return receipt for that it's not in the record. These were emails and after in-house counsel responded to Mr. Landwehr and Ms. Carlson, December 15, 2022, nothing further occurred for another month. A month later, exactly a year from today, January 17, 2023, Mr. Landwehr filed a second petition contending that that petition was granted. This was before my appearance in the case. Petition was granted and Mr. Landwehr was allowed to issue a subpoena to Citibank, which he did. He served that subpoena on Citibank on March 28 and sought to obtain the information. Now, I should state one more point. In the initial petition after it was granted, when he served that on Citibank, he additionally served a bank account statement, a page of a bank account statement that identified Zelle payments to three individuals. So, the names of those individuals are listed in the Zelle payments that he wanted the bank to produce further records on. What's a Zelle payment? I don't know if technology-wise I can explain it very well, but my understanding is it is an app for a bank-to-bank payment. So, if you have the Zelle app on your phone and you wanted to someone and you bank with Chase and you're paying someone who banks with Bank of America, you Zelle that person, John Smith, and it's a transfer from your bank account at Chase to his bank account at Bank of America. I don't know if that's totally accurate. You might be more familiar with Venmo than Zelle. I'm not sure. It's pretty similar. I do think there are differences, but I do think Zelle is bank-to-bank rather than Venmo account-to-Venmo account is my rudimentary understanding of this. Okay, then Mr. Landrear served the subpoena on Citibank on February 28, 2023 to compel production of the names, addresses, and contact information for the alleged fraudsters, again attaching this bank statement that has the names listed there. Um, Citibank then, I was engaged as outside counsel and we filed a motion to quash the subpoena making two arguments. One, that Mr. Landrear does not meet the necessity requirement under Rule 224. And two, because Mr. Landrear suffered no injury, in fact, he has no standing to bring suit against the alleged fraudsters such that he cannot seek the subpoenaed information from the bank. Hypothetically, who suffered the injury? I think Ms. Carlson did because it's her bank account. There was nothing in the record to show that these were Mr. Landrear's funds. I mean, you know, the implication, it's the various things he filed, documents he filed with the court, the implication was always that it was his account, his funds. Um, he did admit in one of the filings that it was Ms. Carlson's that he is not a signer on the account. So, I think if anybody has been injured, it would be Ms. Carlson. Ms. Pebu, in response to, I think Mr. Landrear is going to tell us on rebuttal that his cause of action is the phone calls themselves being solicited, that there are federal statutes that have been violated simply by trying to scam him by the phone, that they were trying to get his money regardless of where it was kept. Um, I'd like you to address that first of all, and then secondly, you know what, I'll wait and give you my second question so it's not compound. Okay, thank you. Um, you know, the phone number was actually in Ms. Carlson's name as well. That's in the record. We pointed out the record sites for that. Um, you know, it's, I suppose Ms. Carlson was potentially also paying for the line that Mr. Landrear was using. Um, I think, you know, the party that has standing to bring a lawsuit for an injury is separate from, um, who would be able to seek information on the bank account. So, Ms. Carlson can easily obtain bank account information from Citibank on her own bank account and who she chooses to provide it to afterwards if Mr. Landrear wanted to bring suit on behalf of himself. I have not researched the TCPA in great detail to understand all the standing issues, but yes. Let's put it in another context. Um, your client receives subpoenas, uh, thousands, hundreds of thousands, millions probably, um, for bank account information, oftentimes which has no relationship to the, uh, the owner of the account, um, but it don't you have a, a way for them to get that information, a way for someone to authorize an information to be given, um, a procedure that, that you respond to those requests with? Yes. I mean, I think in Illinois, typically a third-party citation to discover assets to a bank typically includes a writer, you know, request for documents. I think the basis there really is, you know, it's a court order, um, you know, ordering the bank to comply with the citation and produce documents. I, I understand what you're asking. There's obviously a mechanism, and if there's some kind of order, the court has to, I'm sorry, my client has to respond to it if ordered to produce bank records, um, for another party. I think here the, the petitions, the two petitions filed, um, the first petition certainly did not really set forth the true facts, um, as what actually occurred. The second petition contradicted some of the facts of the first petition and suggested that Mr. Landwehr knew at least the, um, the names of the parties that received the Zelle payments, and he attached transcripts of his, he apparently recorded the calls with the fraudsters. That further contradicted the allegations of the first petition about when these calls took place, how many calls, et cetera, and yes, you know, the bank was subpoenaed, which is why I moved to quash the subpoena, um, to quash that court order ordering the bank to produce records, um, to a third party because of Mr. Landwehr's lack of standing and, um, lack of necessity to obtain the records from Zelle. Well, if, if Mr. Landwehr had, in the request for the subpoena, um, had an approval by the account holder, you would, would you then issue that, or would you then provide those records? Uh, I would, I'm not sure about bank policy. I would think if there was maybe some form or something, uh, from the account holder releasing information to a third party, that would be allowed. Um, I, I can't speak to that for certain. Um, if so, no, no such form was provided to. No, well, I don't think it has anything to do with bank policy, but, you know, when you go into a court, they can say that's not our policy, but the law would be that there would be permission, right? And would there be then eligibility for the third party to receive that information? I think if there was a court order or the account holder, and this is what I mean about bank policy, if bank policy allows the account holder to divulge information, you know, voluntarily divulge information to a third party, um, I, I think the bank would, would have to comply then, or, you know, provide the information because the account holder is, is, um, allowing that voluntarily. Um, and as we cited to in our briefs, I mean, the Illinois constitution allows for right to financial privacy, the bank, you know, I, I understand the right of financial privacy can be, can be waived by the party. Yes, but I don't think there is evidence in the record that Ms. Carlson necessarily did so in wave, but there's nothing in the record to suggest that was done, um, in the subpoenas. Correct. I don't, you're saying I'm if he had Ms. Carlson waive the right to privacy. Correct. And, and permission. Yes. I don't think with respect to the subpoena, I don't think there's anything in the record to that effect. Okay. Thank you. Um, looks like I'm short on time here, but, um, I, I do have one additional question. Did the bank take any steps kind of in an interim basis to ask the court perhaps to review records in camera and, you know, in a protective basis, just tender the names and addresses of these quote unquote fraudsters and no other parts of the account rather than just outright quashing a subpoena that might have been something that was appropriate under the rule. Um, no, that was not discussed. Um, most of the Mr. Landwehr's contained all of the emails between Citibank's in-house counsel, him and Ms. Carlson. So I think that the circuit court had ample evidence to sort of look at what had happened and what the true facts were. Um, one of the documents that was in the record as well, that the circuit court, uh, had reviewed was the bank statement that showed the names of the alleged fraudsters that Mr. Landwehr had sent Zell payments to. Um, obviously it doesn't state their addresses, but, um, it did contain their names in there. And that was one of the things Mr. Landwehr claimed he was trying to obtain through the petitions. Did I answer your question or? Sure. Yes. Okay. Well, the question is, would he have standing to have that disclosed to him, right? If it wasn't in camera. Right. And the court concluded that he did not have standing and he did not suffer damages. Which is why the subpoena was quashed and his, uh, case under rule two 24 was dismissed. So if I ask a third party to pay, um, a contractor, uh, for work, I'm hoping that's going to get done. And they agree to do that for me. Cause I don't have a bank account for whatever reason. And then that contractor who's deposited the check just disappears. And it turns out he gave me a fake name, but that, that, that money went to a account. We just need to figure out whose account that was to try to figure out who defrauded me. Um, is it the bank's position that unless the account holder agreed, um, someone in that position could never seek the record from the bank of who the money went to? Cause that's almost seems to be the argument here. And that doesn't seem to make a lot of sense to me. No, I don't think that's the bank's position. I think, uh, so if, if, if you were in that situation, you're saying if you file the case under rule two 24, what could you do essentially? Right. Um, I think, no, I think in your, your petition, you would allege the facts just as you had described and said, this is why I need this. I need a copy of this check, um, from Citibank to see where it was cashed. So I can, I suppose subpoena that other bank, let's say it was Chase to get further information on this contractor. If the contractor was providing a fake name so I could find the identity of the, uh, the party that I have a claim against. So, and that's, so your problem is not so much with Mr. Land, we're seeking to do this in the abstract. It's what he put in the various petitions and the problems that raised in terms of factual disputes. Uh, yes. I mean, I think the in all his filings, there's always some kind of contradiction in each of his filings, um, with respect to the facts. Uh, and I think there were just a lot of red flags here because of all the contradictions when in-house counsel was involved. And then the fact that this, um, you know, the documents were provided to the account holder and yet Mr. Land, we're still insisting to go through the bank to obtain the documents when the document, you know, the bank tried to cooperate and provide the documents to the account holder who is supposedly a close, uh, friend of Mr. Land where is, especially if he's allowed to withdraw funds from her account through a debit card. Um, and, and we haven't gotten one story, I guess I would say on what exactly happened here. And, uh, the documents have been provided to the account holder yet. Mr. Land where's continued to try to get the documents from the bank. Thank you. If I may, uh, since Ms. Babu won't have another opportunity. Um, that question was asked earlier. Um, you don't have a receipt that they were provided to her, do you? Or, or evidence in an affidavit they were taken to a bank for her to pick up. That, that was alleged, I know. Yes. Uh, I, we don't have a, um, you know, a green slip for certified mailing. Um, I don't know if it was emailed to Kiyoko Goto, the banker that Ms. Carlson said to leave it with, um, just because it was their back office putting it together. I imagine it probably was emailed to her. Um, additionally there, it was mailed to, uh, Ms. Carlson's address on file with the account. But I don't, I did not see in the record at least a certified copy of that mailing. I'm not sure how often the bank will send things by certified mailing. If the account holder requests in certain information, it's probably first class mail. So the record, I guess would not establish that she actually was in receipt. I don't think it's a huge issue, but it, it seemed to be contradicting, contradicting what you were saying. Um, C-69 in the records, the affidavit of Karen Carlson, um, which in the seventh paragraph, I am now reauthorizing John Carter Armstrong to comply with Charles Landwehr's request for information he requires. And I understand that the court can order Citibank to turn over the That was filed prior to the final hearing in this case, I believe. Am I correct about that? Uh, yes, that was filed. If you bear with me one second here. Um, I think that was filed with Mr. Landwehr's, uh, second petition, which was filed on January 17th. And given that this affidavit stated January 5th, I think he had it as part of his, um, second petition. Uh, if I could add just one more point, I think that was kind of raised with Zell. Um, I, you know, I, I don't know the exact answer to this, but given that the bank statements list the individuals who actually got the Zell payments, uh, I'm not certain whether if Ms. Carlson was to click further on that recipient, if there would be more information that would be displayed, um, in the example that, uh, Justice Brennan gave for where did the money go? Which bank received it? Um, I, I don't know the answer to that. I don't have a Zell account, so I'm not able to speak to that, but, um, I think, you know, we clearly have the names of the folks, whether those are their real names or not. Obviously we don't know. Sure. So there is documentation of the account holder, uh, allowing that information to be provided to Mr. Landward? This affidavit does say that. Um, I don't, again, I don't know if this is adequate for bank policy for if there's a separate form or something that had to be filled out by Ms. Carlson to, uh, allow the information to be shared with Mr. Landward. There was nothing in the record to suggest that, uh, Ms. Carlson, um, Ms. Carlson signed such, such a form. There was, you know, affidavits from her that were emailed, um, to, to Mr. Armstrong and House Counsel at Citibank. Well, are we here to examine bank policy or are we here to, to examine the correctness of, of the quashing of the subpoena? I, I agree with you. I just don't know if her bank policy and affidavit that was emailed to counsel was sufficient for the bank to say, okay, we're going to comply with the subpoena or we're going to move to quash it because there are a lot of red flags here with this account, with, you know, the fact that, um, we've, and this is the second petition. Remember that the documents were, I understand there's no return receipt for the mailing in the record to Ms. Carlson, but she said, please provide the documents to this banker at this Elmhurst location. That was done. Documents were also mailed to Ms. Carlson. And then now there's another affidavit being emailed, um, saying, oh, you can share whatever information you want with Mr. Landwehr. I think there were just a lot of red flags, um, and between the allegations, between the various petitions, various filings, Mr. Landwehr had filed, documents were already provided to the account holder. And yet still now you have, you know, insistence, yes, please share whatever you want with Mr. Landwehr. And, and, and to speak to the Mr. Landwehr's motion to strike, I mean, I think the criminal history was a concern, um, because there were already red flags and then there was this additional red flag. Um, I don't have any further or do I know. Okay. Very good. Uh, thank you, Ms. Bapu. Uh, Mr. Landwehr, you may reply. Um, yes, to start with the facts, the facts were developing when I first filed this. And the more I got into it, I learned more about the different parties. I, um, and there were nine separate telephone calls. I gave her, I gave transcripts of those calls with my petition. And Ms. Carlson isn't worried in the $9.24. It's not her $9.24 to be concerned with. That's why she doesn't care. But on Wednesday, November 30th, she sent an email to Mr. Armstrong, uh, C-376 in the record. And there's a, a host of email conversations between Ms. Armstrong, Mr. Armstrong and Ms. Carlson. She says, I did send an email to you prior author or it doesn't say prior, but prior authorizing you to release the paperwork of my boyfriend, Charles Landwehr on my behalf, give him whatever he needs. He uses the account with my approval. I trust him. I just haven't had the chance to add him to the account. I'm available to speak on the phone 430 CST. I'm a teacher. And it's the best time for me in the class all day. I also tried to call you responding to Mr. Armstrong numerous times, but you don't have voicemail. This could have been resolved a year ago. And also when she says on the bank account, there's a name that's true and no offense, your honor, but your name is William E. Holdridge. They don't have enough space for William E. Holdridge. So they will put down William E. Hold. So I'm running across the country looking for William E. Hold, who's a scammer. When there is no William E. Hold that is responsible for my scam. They don't give you the full name. I don't have any address. I have no contact information, which is exactly what I mean. I was told I should have filed suit and sued Citibank also. And then as the case come on, I could have got the information that way. But that's how does that work? I'm trying to get my compensation from the scammers. I'm not trying to waste time. And it's interesting. One of the people I've talked to at different branches at Citibank says, Mr. Landry, keep on it. There's more to this case. Citibank did something wrong in this case. They opened an outright information. I'll bet before this case is over that Citibank did something wrong. That's why we're getting all this backlash. What does it cost? This is Ms. Babu and all these people they've had fighting the subpoena. It had to cost $120,000, which is more than I could ever get from the scammers. I don't know. Maybe you see this every day, but I'm just trying to get three names of people who are actively scamming. And I was told that one of the branches that this account should have had red flags. They get over $20,000 three days in a month, and then the money's transferred out the next day. He says, I don't know. That seems unusual. Today, their account is open. And Ms. Babu can probably talk to them. Ms. Carlson's account has been closed. I'm a scammer. I'm the bad guy. The scammer's account is still open yesterday afternoon when I checked. How did you check the scammer's account was open, Mr. Landry? I have made a friend with the manager at the Citibank in Bloomingdale. He was sympathetic to my cause, but he couldn't. Before I filed the suit, I went in there and showed the paperwork. My first trip wasn't to the courthouse. I'm not an attorney. He's giving you information about one of their deposit holders? I had gone in there with the bank accounts and with Ms. Carlson's debit account, and I put money on the debit account at that time. He told me that the account that that money went into was still open. That's all he told me. Zelle is an FDIC-approved transfer person. There's no fee. Venmo is a third party that charges money. I've learned quite a bit about Zelle. It's very interesting. It's a fair warning system out of Phoenix, Arizona. They make a lot of money. Very smart people, but it's very convenient. That's all I have to say, unless the justices have some questions. I know this is unusual, but I just want to state something. Yes, it is. I don't know. Since it is unusual, what are you trying to do? I have no idea if the scammers have accounts at Citibank or not. Yes, this is a court of law, not a mediation hand holding. You're done, Ms. Babu. Any questions from the bench? No, thank you. Any further? You still have a little time, Mr. Landward. Yes, I'm embarrassed to bring this case to some people like you. I read your opinions. I see the important matters you handle. I'm embarrassed to come here and ask for some names of some scammers. But justice is justice. Think about all the poor little old people who do get scammed and aren't smart enough to report phone calls and aren't able to file a complaint under the TCPA in Chicago. Thank you very much. Thank you, Ms. Babu and Mr. Landward, both for your arguments and presentations on this matter this morning. It will be taken under advisement and a written disposition shall issue.